UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI L. RUNKLE, | Case No. ED CV 07-571-PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Plaintiff appeals a decision by Defendant Commissioner of the Social Security Administration (hereinafter the "Agency"), denying her claim for disability insurance benefits. She claims that the administrative law judge ("ALJ") erred when he found that she was not credible and when he failed to include all of her limitations in his hypothetical question to the vocational expert. She also contends that the Appeals Council erred when it disregarded a letter from her treating physician. For the reasons set forth below, the Court concludes that the ALJ erred in assessing Plaintiff's credibility. Accordingly, the Agency's decision is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

Plaintiff contends that the ALJ selectively parsed the evidence to support a finding that she was not credible, contrary to the dictates of the law and the regulations governing social security cases. She also takes exception to the ALJ's finding that her failure to follow doctors' orders cut into her credibility. For the following reasons, the Court concludes that the ALJ erred.

An ALJ is tasked with judging the credibility of the claimant. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). In doing so, he is entitled to consider a host of factors, including ordinary credibility evaluation techniques, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc), a claimant's daily activities, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), and a claimant's failure to follow a doctor's orders. *Bunnell*, 947 F.2d at 345-46. Where an ALJ provides specific and legitimate reasons for discounting a claimant's credibility that are backed by substantial evidence, the ALJ's determination will be affirmed. *Id*.

The ALJ questioned Plaintiff's credibility because:

1. Plaintiff claimed that her impairments prevented her from working as of November 19, 2003, but records showed that she continued to work after that date;
2. Plaintiff's daily activities were inconsistent with her claimed limitations;
3. Plaintiff did not comply with prescribed treatment for her medical conditions.

(Administrative Record ("AR") 18-19.)

As to the ALJ's first reason, the Agency has conceded in this appeal that Plaintiff did not work after her alleged onset date (November 19, 2003). (Joint Stip. at 13 n.4.) The income reported on

her earnings statements after that date is attributable to sick leave and disability insurance. (AR 65.) Thus, this reason does not support the ALJ's credibility finding.

The next justification supplied by the ALJ for discounting Plaintiff's credibility was that her daily activities were inconsistent with her claims of disabling limitations. (AR 18.) The ALJ noted that Plaintiff engaged in a fairly active lifestyle, driving, running errands, socializing, and performing all manner of household chores. (AR 18.) The ALJ emphasized that Plaintiff reported on one form that there was no physical chore she could not do. (AR 18.) The ALJ also found that Plaintiff's statements in various questionnaires and reports regarding restrictions in her daily activities conflicted with other responses, which suggested that she was not so limited. (AR 18.)

Plaintiff acknowledges that there are contradictions between some of her statements regarding her ability to perform physical activities and her claimed limitations. But, she argues, some of these statements were taken out of context and others, which indicated more limited abilities, were ignored. (Joint Stip. at 7-8.) Plaintiff points out, for example, that the ALJ noted that she could perform all kinds of chores but left out the fact that she also explained that, after performing those chores, she was forced to sleep from 24 to 48 hours. (Joint Stip. at 8.) Plaintiff also highlights the ALJ's reliance on her statement that she liked to read, ignoring the fact that in the same report she noted that she could only read one book a month now, instead of two as she previously could. (Joint Stip. at 8.)

The ALJ is not allowed to selectively parse the evidence and rely only on the evidence that supports his finding to arrive at a result. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, *Rhodes v. Schweiker*, 660 F.2d 722, 724 (9th Cir. 1981), he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982))). It appears to the Court that that is what was done here. Though the ALJ relied on Plaintiff's claim that she could perform any chore, he never mentioned Plaintiff's further claim that she had to rest for 24 to 48 hours after completing such chores. Nor did he talk about the fact that, although Plaintiff can concentrate on a book, her ability to concentrate has fallen in half over the last several years. On remand, he should address not only Plaintiff's statements that support his finding, but also those that undermine it and explain why he has rejected those statements.

The final reason provided by the ALJ for discounting Plaintiff's credibility was that Plaintiff failed to comply with her doctor's orders regarding her treatment. (AR 18.) This was manifested, according to the ALJ, by Plaintiff's failure to go on a low-fat, low-sodium diet and to quit smoking. (AR 18.) The Court concludes that this is not a valid reason for rejecting Plaintiff's credibility in this case.

Clearly, the ALJ can rely on a claimant's failure to follow a prescribed course of treatment in evaluating her credibility, *see Bunnell*, 947 F.2d at 345-46, but the ALJ's reliance on Plaintiff's

failure to follow the prescribed treatment in this case seems to raise more questions than it answers.  As to Plaintiff's continued smoking, the Court does not agree that it is a sign of her refusal to follow doctor's orders.  People do not need to be told by a doctor to quit smoking.  It is fair to say that everyone in this country who smokes knows that it is an unhealthy habit that will likely kill them some day, assuming that they do not die from some other cause first.  In fact, for the last 50 years, cigarette companies have been required to post a warning on every pack of cigarettes they sell in this country, informing the consumer that cigarettes will kill them.  Yet, people still smoke.  The reason many do is because cigarette smoking is a very difficult habit to break.  *See Soliman v. Philip Morris*, *Inc.*, 311 F.3d 966, 973 (9th Cir. 2002) (noting the hearing testimony of FDA Commissioner David Kessler about the addictive properties of nicotine and his observation that "more than 15 million Americans try to quit each year and fail").  The Court cannot conclude, therefore, that Plaintiff's failure to quit is an indication of her lack of credibility.  *See Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (finding claimant's failure to quit smoking "is an unreliable basis on which to rest a credibility determination").

     The Court looks at Plaintiff's failure to follow her doctor's diet recommendation and to lose weight in a similar vein.  You cannot turn on a television or read a newspaper without being bombarded with the dire warnings by medical professionals relating to the epidemic of obesity in this country and the widespread, long-term health consequences that are predicted as a result.  Like smoking, most people do not need to be told by a doctor that being overweight is unhealthy.  Yet, millions of Americans are overweight.  Plaintiff's

failure to comply with her doctor's orders to follow a healthy diet and not gain weight is not enough for the Court to conclude that she is not credible.  Were this enough, the Court would have to conclude that the vast majority of overweight Americans are equally incredible, at least those who have been told by their doctors to control their weight by dieting and have failed to do so.  Though, as the ALJ pointed out, Plaintiff not only failed to follow a prescribed diet and lose weight she persisted in eating 75% of her meals in fast food restaurants and gained 28 pounds in the process, the Court is still not convinced that that is a sufficient reason to reject her credibility.

Given that none of the reasons supplied by the ALJ justify rejecting Plaintiff's credibility, the credibility finding is reversed and the case is remanded for further consideration of this issue.

As a corollary to the credibility issue, Plaintiff complains that the ALJ failed to include in the hypothetical question to the vocational expert the fact that Plaintiff needs to sleep 24 to 48 hours after exerting herself.  (Joint Stip. at 14-15.)  This limitation was based on Plaintiff's statements, which the ALJ apparently did not believe.  On remand, the ALJ will be required to take another look at this issue, too.  If he finds that Plaintiff's statement that she has to sleep for 24 to 48 hours after activity is credible, he should include that limitation in the hypothetical.  If he finds that this claim is not true, he need not include it.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Finally, Plaintiff alleges that the Appeals Council erred when it failed to consider a letter she submitted from her treating doctor.  (Joint Stip. at 3-5.)  The Agency disagrees.  It argues that because

the evidence was neither new or material the Appeals Council was not required to consider it. (Joint Stip. at 5-7.) For the following reasons, the Court finds that the Appeals Council should have considered the letter but that it would not have altered the outcome of this case. Thus, any error was harmless.

In her application for benefits, Plaintiff alleged that she was disabled due to chronic fatigue syndrome. (AR 70.) In assessing this impairment, the ALJ found that it had been "self-reported" by Plaintiff and noted that there were questions relating to the initial diagnosis of the disease. (AR 19.) A fair reading of the transcript from the administrative hearing and the ALJ's decision suggests that the ALJ questioned whether a doctor had initially diagnosed Plaintiff with chronic fatigue syndrome and, if so, when. (AR 19, 291-93.) Despite his concerns, the ALJ ultimately determined that Plaintiff suffered from chronic fatigue syndrome, but concluded that it did not preclude her from working. (AR 16-20.)

Plaintiff appealed the ALJ's decision and included with her appeal a 1998 letter from a treating doctor, Dr. Abatecola, stating that Plaintiff had been his patient since 1994 and had reported to him that, prior to 1994, she had been diagnosed with chronic fatigue syndrome. (AR 266.) Dr. Abatecola also set out some of Plaintiff's symptoms and how they impacted her ability to work. (AR 266.) The Appeals Council disregarded the letter, which it referred to as a report, stating:

> We also looked at the medical report from Robert Abatecola, M.D., dated July 14, 1998. The Administrative Law Judge decided your case from your alleged onset date of disability beginning November 19, 2003. This new information is about

```
     an earlier time.  Therefore, it does not affect the decision
     about whether you were disabled at the time of your alleged
     onset date.
```
(AR 5.)

Plaintiff argues that this evidence was relevant to the questions raised by the ALJ regarding the initial diagnosis of chronic fatigue syndrome and, therefore, should have been considered by the Appeals Council. (Joint Stip at 4-5.) The Agency contends that the Appeals Council was only required to consider evidence that was both new and material and that it did not have to consider this evidence because it was not new (i.e., it existed at the time the administrative hearing) and was not material (i.e., it was in the form of a "To Whom It May Concern" letter and merely conveyed that Plaintiff had reported to Dr. Abatecola that she had been diagnosed with chronic fatigue syndrome before coming to see him in 1994). (Joint Stip. at 5-6.)

The Court finds two flaws in the Agency's argument. First, the Appeals Council found that the information was new. (AR 5 ("this new information is about an earlier time").) The Agency cannot argue now that the information was not new. *See, e.g., Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding it is error for the district court to affirm an ALJ's decision for a reason not discussed by the ALJ). Second, Dr. Abatecola's letter was material in that it shed some light on Plaintiff's history of chronic fatigue syndrome. It spoke to the diagnosis and the longevity of the disease, something the ALJ had questioned. The Appeals Council should have taken it into account.

Assuming it had, however, the Court is confident that Dr. Abatecola's letter would not have altered the outcome of this case.

Thus, the error was harmless. *See Stout v. Comm'r. Soc. Security*, 454 F.3d 1050, 1053 (9th Cir. 2006) (holding error is harmless if inconsequential to disability finding).  Though the ALJ had some questions about the onset date and the initial diagnosis of Plaintiff's condition, he concluded that Plaintiff suffered from chronic fatigue syndrome.  (AR 16-20.)  Dr. Abatecola's letter would not have changed this finding.  Nor would it have caused the Appeals Council to overrule the ALJ's finding that Plaintiff's chronic fatigue syndrome did not preclude her from working.  The letter reported that Plaintiff's condition was first diagnosed before 1994.  Therefore, she had had the condition for about ten years when she alleges she became disabled in 2003.  Dr. Abatecola's 1998 opinion that this condition precluded Plaintiff from working was obviously contradicted by the fact that Plaintiff had worked continuously, as much as 12 hours a day, as an emergency medical technician from November 1985 to May 2003.  (AR 86.)  For this reason, Dr. Abatecola's opinion that Plaintiff could not work was not persuasive in the least.  As a result, the Appeals Council's failure to consider it does not require reversal.

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.[1]

IT IS SO ORDERED.

DATED:     September  30  , 2008.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\RUNKLE, 571\Memo_Opinion.wpd

---

[1] The Court is aware that it has the authority to reverse and remand for an award of benefits but finds that this case does not warrant such relief.